IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                         No.   15-CR-4299-JB

GRANT HYKES,

        Defendant.

## MOTION TO SUPPRESS EVIDENCE DUE TO VIOLATION OF THE FOURTH AMENDMENT

       Grant Hykes, by and through his attorney, Sylvia Baiz, Assistant Federal Public Defender, moves this Court under the Fourth Amendment to the United States Constitution and Fed. R. Crim. P. 12(b), suppress the following:

     A.     All physical evidence seized from Mr. Hykes on November 12, 2015 at the scene of his arrest.

     B.     All statements Mr. Hykes made law enforcement officers on November 12, 2016.

1

C.    All evidence obtained directly or indirectly as a

result of the evidence illegally seized from, and statements made by,

Mr. Hykes.

Mr. Hykes requests that this Court conduct an evidentiary hearing so that

he can demonstrate the facts of this constitutionally impermissible seizure and

search. Assistant U. S. Attorney Samuel Hurtado has been informed of the

instant motion and opposes it.

## STATEMENT OF FACTS

On November 10, 2015 a former confidential informant of Bernalillo

Sheriff's deputy Gerald Koppman called to inform him that Grant Hykes was

planning to kill him and his family.   The informant, who was not then currently

employed by Officer Koppman, was purportedly a truthful person.[1]   The

informant allegedly told Officer Koppman that Grant Hykes believed that Officer

Koppman was a "dirty cop."   The Informant also said that Mr. Hykes had shown

---

[1] The informant is a primary suspect in the killing of Tiffany Boyer.   Moreover, the informant was formerly working with Officer Koppman and when asked whether she has a personal relationship with him, stated, "Unfortunately, he's f-____ gorgeous.   I've had a crush on him for years." P. 99. Furthermore, a sheriffs detective believed that "…the informant was attempting to out Detective Koppman for being dirty in the hopes that the criminal investigation on her for the before mentioned homicide would be overlooked.   I suspected that ____[informant's] plan of the robbery was made in hopes to discredit Detective G. Koppman from his investigation into the homicide."   P. 78

2

her pictures of the front and back of a house which he said belonged to Officer Koppman.    The informant did not provide those pictures, but only described them to Officer Koppman.    On November 9th and 11th, the day before and after the informant's message to Officer Koppman, a person on a motorcycle with distinct wheels appeared near Officer Koppman's house.    Officer Koppman did not see the driver's face because he was wearing a ski mask, but believed it was the same person on both dates.    He described him as being white, 6'1" and weighing between 185-210 pounds.    On November 11th, a woman with red hair was also on the motorcycle.

Two days after Officer Koppman got the information from the informant, Mr. Hykes was present at a Jack-in-the-Box restaurant on Menaul Street.    Mr. Hykes had returned to the Jack-in-the-Box parking lot to his truck to change clothes.    Mr. Hykes reached in to the bed of the truck for a clean shirt.    He was with a friend Heather Vinson Mack, who has red hair.    They were planning on returning a vehicle they had borrowed from a friend earlier that day as Mr. Hyke's truck was not running.    The truck bed of Mr. Hykes F150 Ford Silver pick up was always covered with a tarp, including on November 12, 2015, the date of his arrest.    Mr. Hykes as well as some of his friends kept many personal belongings

in the bed of his truck so it was always covered with the tarp.   Mr. Hykes often
"lived out of his truck".

While Mr. Hykes was changing his shirt, he was immediately rushed
by Bernalillo county Sheriff's deputies including Officer Koppman and thrown to
the ground.   As one of them shouted, "this is personal," Officer Koppman kneed
Mr. Hykes in the back, delivered several powerful blows to his back area and
while he was down on the ground, kicked him in the head.   The sheriff's deputies
who arrested Mr. Hykes claim to have located an empty holster on Mr. Hykes
which they searched incident to his arrest (containing ammunition) and that they
also found a firearm in the bed of the truck which they claimed was in plain view.
Mr. Hykes was kept sitting on the ground at the location for over three hours while
officers, investigated, pursued interrogations and photographed the site.   Mr.
Hykes was also questioned and made statements to the officers.

## ARGUMENTS

### *The Search of Mr. Hykes was the Result of an Unlawful Seizure in Violation of the Fourth Amendment and the Fruits Thereof Must be Suppressed*

The Fourth Amendment of the United States Constitution protects citizens
from "unreasonable searches and seizures" conducted by government officials.
U.S. Const.amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). In applying these

Fourth Amendment protections, the Courts have recognized "three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. White*, 584 F.3d 935, 944-45 (10th Cir. 2009).

Upon seeing Mr. Hykes near his truck at the Jack-in-the-Box parking lot, Bernalillo County Sheriff's Deputies, including Officer Koppman, rushed Mr. Hykes and threw him on the ground. Then if that were not enough he was told that "this was personal" and hit several times in the back area causing much pain. Of course, an arrest is "characterized by a highly intrusive or lengthy search or detention," *United States v. Villagrana–Flores,* 467 F.3d 1269, 1273 (10th Cir.2006) (internal quotation marks omitted). Here, there is no question that Mr. Hykes was under arrest immediately upon being thrown to the ground. A restraint on liberty "readily bears the meaning of a laying on of hands or application of physical force to restrain movement." *California v. Hodari D*., 499 U.S. 621, 626 (1991).

Moreover, actual arrests, which are characterized by a "highly intrusive or

lengthy search or detention," *United States v. Valenzuela,* 365 F.3d 892, 896 (10th Cir.2004), require that a reasonable officer would have probable cause to believe the arrestee has committed a crime, *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Probable cause arises when there exist "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. at 1274.    *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

Probable cause determinations are properly made using a totality-of-the-circumstances analysis. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).   Even so, a finding of probable cause requires "more than a bare suspicion." *Storey v. Taylor,* 696 F.3d 987, 992 (10th Cir.2012) (quoting *Kerns v. Bader,* 663 F.3d 1173, 1188 (10th Cir.2011)) (internal quotation marks omitted). Thus, "[w]here an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest." *Sherouse v. Ratchner,* 573 F.3d 1055, 1062 (10th Cir.2009); *cf. United States v. Welker, 689 F.2d 167, 169 (10th Cir. 1982)* noting "a multitude of innocent explanations" for the

6

arrestee's behavior that, in the light of the entire record, "[did] not add up to probable cause to arrest").  Probable cause will be found to exist where facts and circumstances within the officer's own knowledge, which the officer has received through reasonably trustworthy information, sufficiently warrant a man of reasonable caution to believe an offense has been or is being committed by the person to be arrested. *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979); *United States v. Maher,* 919 F.2d 1482, 1485 (10th Cir.1990). Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer. *Maher,* 919 F.2d at 1485 (citing *United States v. Lopez,* 777 F.2d 543, 552 (10th Cir.1985), and *United States v. McCormick,* 468 F.2d 68, 73 (10th Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973)). The determination of whether probable cause exists is primarily a factual question. *United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990).

Under the Fourth Amendment, the inquiry is objective, *see Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("Subjective intentions play no role in ordinary ... Fourth Amendment analysis."), and thus the actual reasons for the officer's detention of Mr. Villagrana–Flores are of no

consequence. All that is required is "a particularized and objective basis for

suspecting the particular person stopped of criminal activity." *United States v.*

*Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690. (1991).

Significantly, an arrest requires that the police officers have probable cause.

*See, e.g.*, *Untied States v. Mosley*, 743 F.3d 1317, 1329 (10th Cir. 2014) ("[A]n

arrest, unlike a *Terry* stop, requires probable cause."). "A police officer has

probable cause to conduct a search [or arrest] when the facts available to [her]

would warrant a [person] of reasonable caution in the belief that contraband or

evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)

(internal quotation marks omitted).   As with reasonable suspicion, "probable

cause is not reducible to precise definition or quantification" and the Supreme

Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor

of a more flexible, all-things-considered approach." *Id*. (internal quotation marks

omitted).

In the instant case, at the time of Mr. Hykes' arrest all the sheriffs deputies

knew was that a former informant, a prime suspect in a homicide being

investigated by Officer Koppman, alleged that Mr. Hykes showed her pictures of

Officer Koppman's home and stated that he was going to kill him and his family.

This former informant was not reliable and gave false information to Officer

Koppman for two reasons.    First Officer Koppman was investigating the murder

of Tiffany Boyer and the Informant was a prime suspect in that murder.    The

Informant wanted to deflect any focus on her arising from the murder investigation

by concocting a conspiracy to rob and/or kill Officer Koppman.    In fact,

according to government reports, detectives believed, "____[informant] was

attempting to 'out' Detective G. Koppman for being 'dirty' in hopes that the

criminal investigation being conducted on her for the before mentioned homicide

would be overlooked.    I suspected that ____[informant's] plan of the robbery,

was made in hopes to discredit Detective G. Koppman from his investigation into

the homicide." P.78 [2]  Obviously, Officer Koppman did not believe the informant

because he did nothing about the information she gave him for 2 days.    The only

other information the officers had before arresting Mr. Hykes was that someone

with a ski mask on a motorcycle had been seen near Officer Koppman's house,

that Officer Koppman followed the motorcycle to a stop, that the driver videotaped

Officer Koppman and Officer Koppman then immediately left the area.

    In a similar case, the Tenth Circuit determined that there was insufficient

evidence to arrest the person.    In *Sherouse v. Ratchiner*, 573 F.3d 1055 (10th Cir.

2009) all the officers knew before arresting Avila was that she was seen sitting on

---

[2] The name of the informant has been omitted for safety concerns.

a curb with a person who was ambiguously identified as a person who robbed a shore store.   They were friends and Avila had obtained a sweater belonging to her from another friend.   The court held there was sufficient probable cause to arrest her.   The Court reasoned, "[w]e have long recognized that '[p]robable cause requires more than a mere suspicion of criminal activity.' *United States v. Welker,* 689 F.2d 167, 169 (10th Cir.1982). '[A]ssociation with known or suspected criminals is not enough in itself to establish probable cause.' *United States v. Hansen,* 652 F.2d 1374, 1388 (10th Cir.1981). There were many plausible explanations for Ms. Avila's behavior, only one of which involved a criminal intent. *Cf. State v. Gibson,* 113 N.M. 547, 828 P.2d 980, 985 (Ct.App.1992) (aiders and abettors must share criminal intent of principal). The police argue that they believed Ms. Avila was helping Ms. Sherouse conceal her identity by providing her with the red sweater; however, the facts raise nothing more than a suspicion of such criminal activity. Ms. Avila may have retrieved he sweater so the two could leave, or she may have provided it to her friend for warmth. Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest. *See, e.g., United States v. Welker,* 689 F.2d 167, 169 (10th Cir.1982)." *Sherouse* at 1062.

Significantly, in *United States v. Welker*, 689 F.2d 167 (10ᵗʰ Cir. 1982), another case where the Tenth Circuit found insufficient evidence to find probable cause.   The court held, "Probable cause exists if 'at the moment the arrest was made ... the facts and circumstances within (the arresting officer's) knowledge ... were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'   United States v. Gagnon, 635 F.2d 766, 769 (10th Cir. 1980) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)), cert. denied, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Probable cause requires more than a mere suspicion of criminal activity. United States v. Hansen, 652 F.2d 1374, 1388 (10th Cir. 1981). Id. at 168-169.   There the Officer's belief about the neighborhood's racial composition may have caused him to be suspicious when he saw appellant Welker remove the letter from the mailbox. However, there could have been a multitude of innocent explanations for Welker's activity. For example, Welker could recently have moved into the apartment; he could have been a guest of the apartment's occupants; he could have been a friend sent to pick up mail while the occupants were out of town. Id at 169 citing Reid v. Georgia, 448 U.S. 438, 441, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (suspect's activity, while giving rise to DEA agent's suspicions, could also be attributed to "a very large category of presumably

innocent (people)"). The record indicates that Welker did not approach any other mailboxes. He did not look around furtively. After removing the envelope from the mailbox, Welker did not run away, but instead walked to the corner and began talking with his companion. All this occurred in broad daylight. Welker's behavior was as consistent with lawful retrieval of the letter as it was with theft." *Id. at 169.*

Here, like *Sherouse* and *Welker,* Mr. Hykes was merely standing by his truck reaching into the bed of the truck for a shirt to change into.   The fact that an unreliable informant had given Officer Koppman information two days before that Officer Koppman did not believe and that he had seen an unidentifiable person on a motorcycle near his house does not rise to probable cause to arrest Mr. Hykes here.

The ordinary remedy in a criminal case for violation of the Fourth Amendment is suppression of any evidence obtained during illegal police conduct. *See Mapp v. Ohio,* 367 U.S. 643, 648, 81 S.Ct. 1684 (1961). In addition, a defendant may also move to suppress any other evidence deemed to be "fruit of the poisonous tree," (*i.e.,* evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence. *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407 (1963); *United States v. Nava–Ramirez,* 210 F.3d 1128, 1131 (10th Cir.2000).

Additionally, custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint. *Brown v. Illinois, supra*, at 602, 95 S.Ct., at 2261; *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664 (1982).   The Exclusionary sanction applicable to evidence derivatively obtained from a violation of the Fourth Amendment applies to any "fruits" of constitutional violation, whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in course of unlawful activity, or confessions or statements of accused obtained during illegal arrest and detention. *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244 (2006).

Wherefore, for the foregoing reasons, Mr. Hykes respectfully requests this Court suppress all evidence seized from Mr. Hykes and statements made by him on November 12, 2015, the date of his arrest, as violative of the Fourth Amendment to the United States Constitution.

| I HEREBY CERTIFY THAT on this 29th day of February 2016, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Samuel Hurtado, attorney for the government to be served by electronic means as more fully reflected on the Notice of Electronic Filing | Respectfully submitted,<br><br><br>FEDERAL PUBLIC DEFENDER<br>111 Lomas NW, Suite 501<br>Albuquerque, NM 87102<br><br>  S/ *Sylvia Baiz*<br>Sylvia Baiz, AFPD<br>Attorney for Defendant Hykes |
|---|---|

14