IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        Case No. 15CR4299 JB

GRANT HYKES,

        Defendant.

**DEFENDANT'S MOTION FOR INFORMATION PURSUANT TO *GIGLIO v. UNITED STATES* REGARDING ALL ARRESTING OFFICERS AND THOSE INVOLVED IN THE SEARCH**

COMES NOW, Grant Hykes, by and through his counsel of record, Sylvia Baiz, Assistant Federal Public Defender., and hereby respectfully moves this Court pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, for an order directing the government to provide to the defense impeachment as well as exculpatory evidence pursuant to *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763 (1972), regarding all arresting officers and those involved in the search of Mr. Hykes and his possessions.

Government counsel opposes the instant motion.

As grounds, defendant submits the following memorandum brief.

## **INTRODUCTION**

On December 2, 2015, an Indictment was filed charging Mr. Hykes with being Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. 924(g)(1) and 924(a)(2).

Mr. Hykes has filed a motion to suppress evidence. It is expected that several of the arresting agents, including Officers Gerald Koppman, A. Arias, Sgt. L. Funes, S. Cotton, J. Nance, B. Cooksey and Zachary J. Rominger from the ATF will testify at a hearing on said motion. Mr. Hykes requests this Court order the government to disclose certain pertinent information pertaining to the above-mentioned officer as the information is relevant to impeachment. In that vein, Mr. Hykes requests the following information, but his requests are not just limited to such:

- Citizen complaints,
- Disciplinary actions,
- Internal affairs reports
- Performance evaluations,
- All other material written or otherwise revealing specific acts of dishonesty or misconduct bearing on these officers' character for truthfulness as well as their propensity for engaging in unlawful activity going beyond the scope of their official duties.

At issue during a motion to suppress evidence and at trial would be the nature of the encounter and subsequent search, and any issues concerning the constitutional propriety of these events. The Court's determination of the propriety of the encounter in this case would largely hinge on the agents' rendition of the encounter. Therefore, any issues pertaining to their credibility must be brought to light in order for the Court to fully assess the veracity of any averments by the agents.

In support of this motion and request for information, the defendant submits that he has learned through several sources that some of the officers listed have been the subject of internal investigations and/or law suits involving excessive use of force for alleged acts affecting their credibility.

## ARGUMENT

In *Giglio v. United States,* the Court extended its holding in *Brady v. Maryland,* 373 U.S. 83 (1963), to include evidence affecting the credibility of the government's witnesses. 405 U.S. at 154. "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." 405 U.S. at 154. Due process as interpreted in *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio,* as well as federal legislation, *see* Jencks Act, 18 U.S.C. § 3500, require a large class of materials to be turned over to the defense in a criminal case.

In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985), the Court reaffirmed its holdings in *Brady* and *Giglio,* stating that the *Brady* rule extends to "[i]mpeachment evidence ... as well as exculpatory evidence [because] ... if disclosed and

used effectively, [impeachment evidence] may make the difference between conviction and acquittal." *Bagley,* 473 U.S. at 676.

In this case, the defense has a good faith basis to believe that the internal personnel files of some of all of these officers contain information that may potentially be properly used for impeachment. The defense submits that this Court should order the disclosure or, at a minimum, conduct *in camera* inspection of their files for the following materials:

- Documentation of any and all OPR Investigations
- Citizen complaints
- Disciplinary write-ups
- Disciplinary actions
- Disciplinary reports
- Unfavorable performance evaluations
- Internal investigations
- Reprimands for off or duty conduct

Here, witnesses have revealed that the information relied upon by officers to arrest Mr. Hykes was false and that he was arrested on site, beaten and searched without warrants. The defense contends that the officers' conduct violated Mr. Hykes Fourth Amendment rights. The Court will make a determination of whether Mr. Hykes motion to suppress evidence is well-founded and the credibility of the officers' will be of critical import for this Court's ultimate decision.

The contents of the officers' personnel files would be determinative on the issue of the witness' credibility. Indeed, any information within their personnel file that calls into question his credibility as the prosecution's central witness, including reprimands for off or duty conduct, which would "undermine public confidence in the department" should be disclosed to Mr. Hykes. *See Flanagan v. Munger*, 890 F.2d 1557 (10th Cir. 1989)

(identifying that off-duty officer conduct which would undermine public confidence in a law enforcement agency is information related to the officer's work and is subject to disclosure). Such information would specifically include, but not be limited to, any other disciplinary review, any contemplated discipline or discipline actually imposed, and civilian complaints.

Significantly, the Court in *United States v. Huerta-Rodriguez*, 2010 WL 3834061 (D. New Mexico, unpublished Aug. 12, 2010), held that, "A prosecutor must disclose information of which it has knowledge and access. *Id. citing, United States v. Bryan*, 868 F.2d 1032, 1037 (9TH Cir. 1989) and that a prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" *Id.* Even though the prosecutor does not have to duty to obtain evidence from third parties. See *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001). The court further reasoned that, "when the only witnesses against a defendant are police officers, anything that goes to their credibility is exculpatory and admissible." *Id. citing Denver Policeman's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 436 (10th Cir.1981). In *Huerta–Rodriguez* as in Mr. Hykes case, it is the defendant's word against that of the officers and the court found that the defendant was entitled to disclosure of all exculpatory material contained in the police personnel files of the United States' witnesses if the United States has possession of the files and/or can be reasonably expected to secure these files. *Hernandez-Rodriguez* at 9.

Furthermore, the Court has previously cautioned the U. S. Attorney's office to honor their "open file" policy and not just disclose to "…criminal defendants only the bar minimum that the law requires and nothing more. See *United States v. Rodella*, 2015 WL 711931, slip copy, D. New Mexico, Note 12, Feb. 2, 2015).

In *Rodella* the Court noted,

> The Court will continue to faithfully follow the law and will not require the United States to disclose any information which the law does not require it to disclose. The Court, however, cautions the United States that, if it continues its pattern of refusing to disclose available information to criminal defendants, it is undermining the representation that it routinely makes that it has an open file policy and that the Court will take that purported policy with a grain of salt. That representation, which is not completely accurate, and the unclear practices of the Assistant United States Attorneys undermine the administration of justice and the public's perception of the justice system. It also puts its convictions unnecessarily at risk, if the Court is wrong that the United States did not have to produce the documents. The United States is a key player in the adversarial system; as the people's representative, it too plays a fundamental role in ensuring the appearance of justice.

Id. at note 12.

As recommended in Deputy Attorney General David W. Ogden's Memorandum for Department Prosecutors regarding criminal discovery guidelines (January 4, 2010) (hereinafter "Ogden Memo"), "[p]rosecutors should have candid conversations with the federal agents with whom they work regarding any potential *Giglio* issues, . . . [and] should be familiar with circuit and district court precedent and local practice regarding obtaining *Giglio* information from state and local law enforcement officers." *See* Section B(6), "What to Review." The memo also clarifies that "regardless of whether the

information is memorialized, [it] must be disclosed to the defendant reasonably promptly after discovery.  *See* "Step 3: Making the Disclosures." (*See* Ogden Memo, attached hereto as an exhibit).

As noted above, under *Brady v. Maryland* and its progeny, the Government is required to disclose all exculpatory materials, including impeachment evidence. 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  In *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the Supreme Court held that the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  When the scope of disclosure of discovery material to defense counsel is questionable, errors are to be made in favor of disclosure.  *United States v. Agurs*, 427 U.S. 97, 108 (1976) (stating that the "prudent prosecutor will resolve doubtful questions in favor of disclosure"); *see also* Ogden Memo at (A)(4)("Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes. Carefully considering efforts to locate discoverable information are more likely to avoid future litigations over *Brady* and *Giglio* issues and avoid surprises at trial.").

Wherefore, for the foregoing reasons, Mr. Hykes respectfully requests this Court order the government to provide to the defense information in the personnel file of all officers involved in the arrest and search of Mr. Hykes pertaining to their credibility or, at a minimum, conduct an *in camera* inspection of said files.

//

//

//

| | |
|---|---|
| I HEREBY CERTIFY THAT on the 29th day of February 2016, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Samuel Hurtado, attorney for the government to be served by electronic means as more fully reflected on the Notice of Electronic Filing | Respectfully submitted,<br><br>FEDERAL PUBLIC DEFENDER<br>111 Lomas NW, Suite 501<br>Albuquerque, NM 87102<br><br> S/ *Sylvia Baiz*<br>Sylvia Baiz, AFPD<br>Attorney for Defendant Amador-Beltran |